**UNITED STATES of America,
Appellee,**

v.

**David Paul BENDER, Appellant.**

**No. 72–1226.**

United States Court of Appeals,
Eighth Circuit.

Submitted Sept. 14, 1972.

Decided Nov. 8, 1972.

Charles P. Carroll, Minneapolis, Minn., for appellant.

John M. Lee, Asst. U. S. Atty., Minneapolis, Minn., for appellee.

Before MATTHES, Chief Judge, and LAY and HEANEY, Circuit Judges.

LAY, Circuit Judge.

David Paul Bender, upon waiver of a jury, was convicted for refusal to submit to induction into the Armed Forces of the United States in violation of 50 U.S.C.App. § 462. The trial court, 336 F. Supp. 763, held that since he had failed to appeal his I-A classification and thereby exhaust his administrative remedies within the Selective Service System he was precluded from obtaining judicial review of his classification. Additionally, the district court found that the local board did not mislead the defendant so as to deter him from exercising his right of administrative appeal.[1]

The facts show that the defendant initially registered with Local Board No. 42, Hennepin County, Minnesota, on June 25, 1964. He received II-S deferments for five years to enable him to graduate from college. He graduated in August 1969. On August 19, 1969, appellant was reclassified I-A. In May 1969 he accepted a contract to teach at a private school for the school year beginning in September 1969. This information was duly forwarded to the local board and was a part of defendant's record when he was reclassified I-A in August 1969. Defendant did not appeal his I-A classification and an order to report for induction was issued on October 6, 1969. However, due to his teaching engagement, defendant sought and received postponements issued October 14, 1969, January 7, 1970, and June 18, 1970, enabling him to teach until the end of the Spring 1970 semester. On July 17, 1970, defendant submitted a Form 150 requesting a I-O classification as a conscientious objector. Because of the pending induction order this request was rejected by the local board at their July 21, 1970, meeting. On August 14, 1970, defendant's postponement was terminated and he was ordered to report for induction on September 21, 1970. From defendant's failure to submit to induction as above ordered, his indictment, trial and conviction ensued.

■■  The record reveals conflicting evidence as to whether the defendant was misled by the secretary of the local board concerning his appeal rights. The trial court found that the defendant was not misled by the information given by the secretary. There exists substantial evidence which supports the district court's finding of fact. This finding, of course, cannot be set aside on appeal unless it is clearly erroneous. We cannot assess the record in this light.[2]

1. The trial court, relying on Ehlert v. United States, 402 U.S. 99, 91 S.Ct. 1319, 28 L.Ed.2d 625 (1971), also held that the local board was not required to reopen the defendant's classification in order to review his conscientious objector application since the defendant's induction order was issued prior to his conscientious objector application. The defendant does not challenge this finding and concedes that *Ehlert* controls the conscientious objector claim.

2. The cases which have found misleading conduct to be a denial of due process involved one distinguishing factor—namely,

The fundamental issue then is whether judicial review is precluded since the defendant had failed to exhaust his administrative appeal. The trial court felt bound by the principles of McGee v. United States, 402 U.S. 479, 91 S.Ct. 1565, 29 L.Ed.2d 47 (1971). We must respectfully disagree.

Prior to the McGee case, McKart v. United States, 395 U.S. 185, 89 S.Ct. 1657, 23 L.Ed.2d 194 (1969), was decided. The registrant in McKart claimed that he would have been exempt from military service because he was the "sole surviving son" within the meaning of 50 U.S.C.App. § 456(o). The district court held that he could not raise that defense since he failed to exhaust his administrative remedies. The Supreme Court disagreed and in doing so reviewed the proper role the exhaustion doctrine should occupy in selective service cases. The Court noted that the exhaustion doctrine should not be applied "blindly in every case" (McKart at 201) and recognized that the use of the exhaustion doctrine can be "exceedingly harsh" in criminal cases. Id. at 197. The Court went on to hold that the question of whether a registrant is entitled to a sole surviving son exemption is solely one of statutory construction. As such, its resolution does not require any particular expertise by the appeal board. Therefore, since administrative review of an issue involving only statutory construction would not significantly aid a subsequent judicial review, the Court found no "compelling reason why petitioner's failure to appeal should bar his only defense to a criminal prosecution." Id. at 199, 89 S.Ct. at 1665.

Two terms later the Court decided McGee v. United States, 402 U.S. 479, 91

S.Ct. 1565, 29 L.Ed.2d 47 (1971). The registrant in McGee applied for a conscientious objector status and submitted a Form 150 setting forth his views concerning participation in war. The registrant's request was rejected by the local board and he was classified I-A. The registrant did not seek either a personal appearance before the board nor review by the appeal board. In fact, he returned, unopened, the letter sent by the board informing him of his specific appeal rights since he was pursuing a policy of noncooperation. At his trial for refusal to submit for induction, the registrant claimed that the local board erred in classifying him I-A. Both the trial court and the court of appeals held that such a defense was barred because petitioner failed to exhaust his administrative remedies. The Supreme Court agreed and affirmed the judgment of conviction.

The Court took note of the fact that "McKart expressly noted that as to classification claims turning on the resolution of particularistic fact questions, 'the Selective Service System and the courts may have a stronger interest in having the question decided in the first instance by the local board and then by the appeal board, which considers the question anew.'" 402 U.S. at 486, 91 S.Ct. at 1570. The Court then stated:

"The exhaustion requirement is properly imposed where, as here, the claim to exemption depends on careful factual analysis and where the registrant has completely sidestepped the administrative process designed to marshal relevant facts and resolve factual issues in the first instance." McGee at 488, 91 S.Ct. at 1571.

---

the alleged misleading statement of the local board was *uncontradicted*. See for example, United States v. Cordova, 454 F.2d 763, 765 (10 Cir. 1972); United States v. Fisher, 442 F.2d 109, 112 (7 Cir. 1971); United States v. Burns, 431 F.2d 1070, 1071 (10 Cir. 1970); United States v. Bryan, 263 F.Supp. 895, 896 (N. D.Ga.1967).

In the instant case, the government did produce rebuttal testimony. Under such circumstances the issue becomes one of evaluating the credibility of the witnesses and the weight of the evidence—both of which are a function of the trial court. United States v. Lowell, 437 F.2d 906, 908 n. 1 (9 Cir. 1971).

It is true that a II-A deferment generally involves the same gathering and analysis of relevant facts as a I-O classification.[3] On this basis there is much force in the trial court's observation that *McGee* is more controlling than *McKart* and the failure here by the defendant to exhaust all administrative remedies should not be excused. However, directly involved here and the apparent basis of the board's rejection of defendant's II-A deferment in August 1969 was the board's construction of 32 C.F.R. § 1622.23(a)(1).

On June 9, 1969, when the defendant completed his application he stated that his occupation at that time was a "student" but that he was under contract to teach beginning in September 1969. One of the fundamental questions for the local board to resolve in applying § 1622.23 would be the proper interpretation to be given to § 1622.-23(a)(1). The issue is whether Bender, on August 19, 1969, is a registrant who "is, or but for a seasonal or temporary interruption would be, engaged in such activity." Under similar facts another district judge from the same district has held that a person holding a contract to teach in the future qualifies under this regulation. See United States v. Olmscheid, 350 F.Supp. 889 (D.Minn. 1972). See also Shook v. Allen, 307 F. Supp. 357 (N.D.Ohio 1969). The local board did not demonstrate its reasons for denial of the II-A classification. *Cf.* United States v. Hanson, 460 F.2d 337 (8 Cir. 1972). However, some insight into the board's reasoning may be gleaned from the testimony of the local board's secretary. She verified Bender's telephone conversation with her after he had received his I-A classification in August. She stated:

> "[H]e was wondering about a student or teaching deferment. Well, *at that time* he did not qualify for one and he was informed that if he was given— mailed an induction order during that particular school year he would receive a postponement of induction covering that year . . . ." (Emphasis ours.) [4]

It is thus apparent that the local board interpreted § 1622.23(a)(1) as precluding any occupational deferment unless the registrant was actually teaching, or had been previously engaged in teaching, at the time the classification was made. Although we do not pass on the question at this time we simply observe that another reasonable interpretation of § 1622.23(a)(1) is that of the district court in the *Olmscheid* and *Shook* cases which recognize that a II-A classification is proper for a registrant who is under contract to commence his teaching career at the end of the seasonal interruption of the school term. Consequently, we find more controlling here the language of *McKart* that "[t]he resolution of that issue [statutory interpretation] does not require any particular expertise on the part of the appeal board; the proper interpretation is certainly not a matter of discretion." *McKart* at 198 of 395 U.S., 89 S.Ct. 1657 at 1665. We

---

3. According to 50 U.S.C.App. § 456(h)(2), the President, under such rules and regulations as he may prescribe, may defer persons whose employment is found necessary to the maintenance of the national health, safety, or interest. Pursuant to this rule-making authority, 32 C.F.R. § 1622.23 was promulgated:

> "§ 1622.23 Necessary employment defined.
>
> "(a) A registrant's continued service in an occupation identified pursuant to § 1622.22(a) shall be considered to be necessary to the maintenance of the national health, safety, or interest only when all of the following conditions exist:

> "(1) The registrant is, or but for a seasonal or temporary interruption would be, engaged in such activity.
>
> "(2) The registrant cannot be replaced because of a shortage of persons with his qualifications or skill in such activity.
>
> "(3) The removal of the registrant would cause a material loss of effectiveness in such activity."

4. Of additional significance to the board's rejection on August 9, 1972, is the board's mailing to the defendant on August 19, 1969, some "information on teacher deferments."

acknowledge that once such an interpretation is made then the expertise of the board is needed to resolve the requirements of § 1622.23(a)(2) and (3). We recognize that a proper classification of a registrant cannot always be neatly separated into separate compartments of legal and factual resolutions. Here the persuasive factor is that the present record strongly indicates the sole basis of rejection of the occupational deferment by the board rested on the legal interpretation of § 1622.23(a)(1) rather than the defendant's compliance with the requirements of (a)(2) and (3) of the regulations.[5] Assuming the district court would find that the defendant was eligible to be considered for II–A under § 1622.23(a)(1), then it becomes a relatively simple analysis to determine whether there is a basis in fact within the file which demonstrates that the defendant was irreplaceable and whether his absence would cause a material loss of effectiveness in the school.

█ Under the circumstances we find that the integrity of the exhaustion doctrine is not presently served since the case is dependent upon a legal construction of a regulation. When this occurs, a stilted requirement that the exhaustion doctrine prevents the raising of a valid defense in a criminal prosecution would be a miscarriage of justice. On remand the district court is not determining whether on the record the defendant was entitled to a II–A classification—judicial review requires searching the record to determine if a basis in fact supports the board's I–A classification.

The judgment of conviction is reversed and the cause is remanded to the district court to review whether there exists within the record a basis in fact for defendant's I–A classification.

---

5. At the time the defendant made his application for deferment the school principal notified the board that the school had no one prepared to teach science and that it would be virtually impossible to find a replacement for the forthcoming school year. There is nothing in the record to refute these facts. Of course, if the registrant is eligible for deferment under a lower classification the board is not legally justified in simply postponing his induction without changing his classification at the time. Cf. United States v. Rundle, 413 F.2d 329 (8 Cir. 1969).